### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### GALVESTON DIVISION

| | | |
|---|---|---|
| **TGC SYSTEMS, LLC, and** | § | |
| **TOTAL GROW HOLDINGS, LLC,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| **v.** | § | **CIVIL ACTION NO. 3:21-cv-369** |
| | § | |
| **GROW GENERATION MANAGEMENT, Inc.** | § | |
| | § | |
| **Defendants.** | § | |

### COMPLAINT

TGC Systems, LLC ("***TGC Systems***" registered in Texas as Total Grow Control, LLC) and Total Grow Holdings, LLC ("***TGH***" also "***Total Grow Holdings***" that is formally doing business in Texas) for their Complaint against Defendant Grow Generation Management, Inc. ("***Grogen***"), represented as being by Grogen as a NASDAQ publicly traded Delaware company that is registered to do business in Colorado, and respectfully submit their Complaint, as follows:

### I. INTRODUCTION

This matter involves a major financial transaction wherein Plaintiff manufacturers had significant financial expectations based on an asset sale to a public company with what would be effectively an ongoing business with long-term employment contracts for the key executives. The Defendant issued a promissory note and exercised an option to complete the asset sale, but then continually delayed a closing throughout 2021, only to then make a year-end aggregated payment demand to obtain the involved assets at a major discount from the transaction price and effectively take over a Plaintiff manufacturer. Plaintiffs' claims are in law and equity and substantial damages, both compensatory and punitive, are alleged.

More specifically, this matter involves a "Promissory Note & Acquisition Rights Option Agreement" (the "***Note***", the '***Option***", and the "***Transaction***") (**Exhibit "A"** hereto), wherein the

Transaction parties are Plaintiff TGC Systems and Defendant Grogen, with Plaintiff TGH as the Note "***Guarantor.***"

The Note was executed at March 15, 2021 and was in the amount of one million five hundred thousand dollars ($1,500,000). The Note included eight percent (8%) interest, compounded (the "***Note Amount***"). The Option was for acquisition of TGC Systems assets for six million dollars ($6,000,000) in cash and Grogen stock (the "Assets"), with ancillary obligations to key executives of three million dollars ($3,000,000) in stock (together the "Asset Acquisition Amounts"). The Note (including interest) was to be cancelled and offset on completion of the Transaction.

Defendant Grogen has now formally demanded an aggregated payment of interim / monthly payments of the Note and has claimed default by TGC Systems if not paid pursuant to a formal demand (the "***Demand for Payment***") delivered to Plaintiff TG Systems and to the Plaintiff TGH as Guarantor. The amount of the demand is $721,143 (**Exhibit "B"** hereto). The TGC Systems' Assets that were the subject of the Asset Acquisition Amounts are alleged to be collateral subject to execution and seizure by Defendant Grogen in its Demand for Payment and in independent statements to Plaintiff  TGC Systems.

Pursuant to the provisions of the Note, Plaintiff TGC Systems formally provided a "Notice of Mediation & Arbitration" due to a "*controversy or claim*" regarding the Defendant Grogen Demand for Payment in what is a detailed Note and Option Transaction. (**Exhibit "C"** hereto). Pursuant to the Transaction, TGC Systems is entitled "*mediation*," and then if the mediation is unsuccessful an "*arbitration*," pursuant the provisions of the Note.  (**Exhibit "A"**). Defendant Grogen refused and continues to refuse to honor the Transaction based formal mediation / arbitration Notice of Mediation & Arbitration by Plaintiff TGC Systems.

Subsequent to the Plaintiff TGC Systems' Mediation & Arbitration Notice, Defendant GroGen stated, by and through its President, that it was entitled to ownership of the TGC Systems Assets by reason of the TGC Systems alleged default (as set out in the Demand for Payment), that Defendant Grogen fully

intended to execute on the TGC Systems' Assets and seize the Assets pursuant to the Demand for Payment and its alleged Note rights, but that Grogen was willing to cancel the Note (with interest) if the TGC Systems' Assets were transferred to Defendant Grogen in cancellation of the Note (and interest). Defendant Grogen, through its President, also stated that it would absolutely not complete the Transaction as agreed. Grogen further stated, by and through its President, that the CEO of TGC Systems was requested to come to work for Defendant GroGen and would thereby be "*taken care of*" by stock and other Grogen rights and compensation in the process (in what would effectively be a violation of the TGC Systems CEO's fiduciary obligations) (the "***Take-Over Attempt***").

In response to the both the refusal of Grogen to mediate / arbitrate and the Grogen Take-Over Attempt, Plaintiff TGC Systems and Plaintiff TGH Holdings provided a "Notice of Lawsuit" to Defendant Grogen (**Exhibit "D"** hereto).

Plaintiff TGC Systems is seeking damages for violations of the Transaction terms and conditions by Defendant Grogen along with seeking further damages from Defendant for other actionable claims, in law and equity, including (but not limited to) damages for breach of contract, promissory estoppel, fraud, fraudulent misrepresentation, breach of the implied covenant of good faith and fair dealing, as well as damages for other actionable conduct by Defendant Grogen.

## II.  PARTIES

1.      The Plaintiff parties are each corporations doing business in the State of Texas. The Defendant corporate party is a corporation registered in Delaware with its principal place of business in the State of Colorado.

2.      Plaintiff TGC Systems is a State of Nevada limited liability company (registered in the State of Texas as Total Grow Control, LLC) with its principal place of business located at 2190 Washington Avenue, Alvin, Texas 77511.

3.     Plaintiff Total Grow Holdings is a State of Delaware limited liability company formally doing business in the State of Texas, with its principal place of business located at 2190 Washington Avenue, Alvin, Texas 77511.

4.     Defendant Grogen is a State of Delaware corporation company, formally doing business in Colorado, with its principal place of business located at 5619 DTC Parkway, Greenwood Village, Colorado 8011

## III.  JURISDICTION AND VENUE

5.     Defendant Grogen entered into a formal written Transaction with State of Texas based corporations and with the Transaction to be performed and closed in the State of Texas.

6.     Jurisdiction over this action is proper pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000.00 and this civil action is between citizens of different states.

7.     Venue is proper as actions giving rise to this Complaint were centered in the city of Alvin, State of Texas. The actions involve State of Texas based Plaintiff participants in the Transaction, involve State of Texas manufacturing plant-based Assets that are the subject of the Transaction, and involve a Transaction to be completed in the State of Texas with ongoing use of the Transaction Assets by Defendant Grogen in the State of Texas.

## IV.  FACTUAL BACKGROUND

8.     Plaintiffs re-allege and incorporate herein by reference Paragraphs 1-11 of this Complaint as if the same were fully set forth in this Paragraph.

9.     Plaintiff TGC Systems was and is an "…*entity created for the purposes of effecting the* [Grogen sale of Assets] *Transaction and that* [were] *aggregated for sale to* [Grogen as] *Purchaser."* (**Exhibit "A"**). The Assets were approved for sale by Plaintiff TGH (through its members), the Guarantor, to Plaintiff TGC Systems, specifically for on-sale to Defendant Grogen.

10. The TGC Systems "Business" (also the "*Business*" and the *"Total Grow Control Business"* for the purposes of the Note and Option) is "… *defined as the sale of growing supplies and related fabricated equipment for organic grow operations and grow operations using hydroponics*." (**Exhibit "A"**).

11. Plaintiff TGH, the Guarantor, was and is a manufacturing company located and doing business in the State of Texas, that, among other business activities, sells processing equipment, and provides software, hardware, and technology infrastructure to purchasers for hemp oil extraction. The hemp oil extraction business was retained by TGH, and the Assets transferred to TGC Systems for the Transaction with Defendant Grogen were to be for the manufacture of equipment, systems and hardware/software processes that relate to "…*organic grow operations and grow operations using hydroponics*." (**Exhibit "A"**).

12. Defendant Grogen is (and/or is a wholly owned subsidiary entity of) a NASDAQ publicly traded corporation operating nationally in the United States, that sells consumables and other related products principally for use by cannabis and hemp "*grow(s)*" through brick-and-mortar stores, on-line and through a commercial division. Defendant Grogen has purchased equipment and products from Plaintiffs in the State of Texas independent of the Transaction.

13. Defendant Grogen's stated intent in engaging in the Transition was to enhance its commercial division though further vertical integration by the acquisition of the TGC Systems manufacturing based Assets (including inventory and work in process). Two key TGC Systems executives would continue with the Business post-Transaction and be employed by Defendant Grogen and the TGC Systems manufacturing "*Facility*" would be retained. (**Exhibit "A"**). The then employed TGC System personnel (at the time of Closing and at the Facility) would be employed by Defendant Grogen.

14.     The Transaction was to be completed by Defendant Grogen "*… or an affiliated entity created for the purpose of effecting the Transaction*." (**Exhibit "A"**).

15.     The law of "Colorado" is to govern the Transaction. (**Exhibit "A"**). There is no agreed "*jurisdiction and venue*" provisions in the Note or Option, and Texas is the proper jurisdiction and this Court is proper for venue.

16.     As a condition of the Transaction Plaintiff TGC Systems could not: "*(a) sell, lease, license, sub-license, pledge or otherwise dispose of any significant part of the assets of the Seller* [TGC Systems] *to any party other than Purchaser* [Grogen] *except for sales of inventory in the ordinary course of business, (b) enter into any merger, consolidation or other acquisition transaction involving the Seller* [TGC Systems] *or its shareholders, or any transaction similar to the foregoing in format or purpose, with any party other than Purchaser* [Grogen] *other than strategic transactions and/or arrangements compatible with the Business post Transaction that would commercially benefit the Business (the "Strategic Arrangements"), (c) issue, sell, transfer or otherwise dispose of any debt or equity securities of the Seller to any party other than to Purchaser* [Grogen], *(d) enter into any recapitalization, reorganization or other transaction involving the Seller* [TGC Systems] *with any party other than Purchaser* [Grogen], *or (e) enter into any agreement, encourage, solicit, provide information to or negotiate or cooperate in any way with any party, other than Purchaser* [Grogen] *and its advisors, to do any of the foregoing.*" (The "***Restrictive Conditions***") (**Exhibit "A"**).

17.     Defendant violated the provisions of the Note and Option in a number of respects (as will be set out herein). These violations and breaches of the Transaction documents have damaged TGC Systems.

18.     Key facts, along with the facts and allegations previously alleged by Plaintiffs in Paragraphs 1-21, include the following, without limitation, and materially relate to the Transaction and Defendant Grogen's actionable conduct.

- For a number of months prior to the execution of the Note and Option, commencing in late 2020, Plaintiff TGC Systems provided significant information regarding its Business and Assets to Defendant Grogen, including answering detailed due diligence questionnaire(s).

- The Parties entered into the Note & Option as a Transaction at March 15, 2021.

- Pursuant to the Transaction, Defendant Grogen transferred one million five hundred thousand dollars ($1,500,000) (the "Loan Funds") to Plaintiff TGC Systems.

- The Loan Funds were then used by Plaintiff TGC Systems in the Business, in large part for inventory, in its operations and in anticipation of completion of the Transaction. An element of the Note was payment of "Interim Monthly Payments" against the Note, which TGC Systems was told by the President of Grogen (Michael Salman) "*not to worry about*" as a Transaction closing would take place in short order.

- In April 2021, the President of Grogen and the Grogen Chief Operating Officer (Tony Sullivan) participated in meetings with the TGC Systems CEO (Derek Oxford) and other TGC Systems personnel at the TGC Systems manufacturing Facility in Alvin, State of Texas. This meeting was, according to Grogen, to "… *gather all open items for closing*" of the Transaction.

- During the April 2021 meetings, the President of Grogen acknowledged that an important portion of the Loan Funds were to be used for TGC Systems inventory, and that he was in full agreement.

- In May and June 2021 requisite Transaction documents were actively being prepared by counsel in preparation for a Transaction closing.

- In July 2021 a final "inventory", inspection and other pre-closing actions were to be taken at the TGC Systems Texas Facility but were cancelled literally at the last minute by Defendant Grogen.

- In July and August 2021, Plaintiff TGC Systems extensively questioned the intent of Defendant Grogen to actually close the Transaction and offered specific business-based alternatives should Defendant Grogen chose not to close (the "***Alternatives***").

- In the discussion of Alternatives or continuing to a closing of the Transaction in July and August 2021, the issue of two million dollars ($2,000,000) to provide operating capital (in part pre-closing, and in part post-closing) was specifically discussed (the "***Operating Capital Amount***"). The Operating Capital Amount had been discussed prior to and subsequent to the execution of the Note and Option. The Loan Funds, when transferred, were acknowledged as adequate to keep the TGC Systems Business operating at a basic level but did not constitute adequate financial resources for an acceleration in growth by Plaintiff TGC Systems or for the TGC Systems executives (who were to be hired by Defendant Grogen as an element of the Transaction) to meet necessary targets for bonus level Grogen share issuance. It was also discussed that further delays in closing the Transaction would cause cash constraints at Plaintiff TGC Systems. It was agreed by Defendant Grogen with Plaintiff TGC Systems as an "understanding" that TGC Systems would not be required to make Interim Monthly Payments pursuant to the Note, as there would simply not be the cash available to TGC Systems to do so and still operate at a basic level.  There was then no request for such payments from Plaintiff TGC Systems by Defendant Grogen to and until the December 15, 2021, when the aggregated Interim Monthly Payment Demand by Defendant Grogen was made to Plaintiff TGC Systems.

- Notwithstanding consideration of the Alternatives, Defendant Grogen continued to evidence its intent post August 2021 to proceed to a closing of the Transaction, which was with the consent and support of Plaintiff TGC Systems. Various closing timeframes were then set during the balance of 2021 that were not met and/or cancelled by Defendant Grogen.

- As at September 15, 2021 the Option technically expired due to a six (6) month condition. (**Exhibit "A"**). However, based on representations by Defendant Grogen that the Transaction would proceed, Plaintiff TGC Systems continued to act in accordance with the provisions of the Asset purchase (as the Option was previously exercised by Grogen) and to honor the comprehensive Restrictive Conditions.

- In October 2021, the head of Grogen's commercial division (Jeremy Corrao) was sent to the TGC Systems Facility in Texas to do a site visit and "*inventory*" check. On-site Facility meetings were then held (the "***Site Visit***").

- Later in October 2021, following Site Visit, Defendant Grogen, as a public company, issued a formal press release regarding the Transaction and its then active participation. (**Exhibit "E"** hereto).

- In October 2021, Defendant Grogen, by and through its President, stated to TGC Systems that the closing would take place in early November 2021. That did not happen.

- In November 2021, Defendant Grogen, by and through its President, stated that the closing would again need to be delayed and would take place in early 2022; sometime following the 2021 calendar and financial year end.

- During the period leading up to November and December 2021, and following the July and August 2021 "Alternatives" discussions, the Grogen public company stock was trading at significant lows compared to its prior trading price. A transfer of Grogen stock to Plaintiff TGC Systems, as a key element of the Transaction would have involved a much

more significant number of shares than in March 2021, at the time of execution of the Note and Option.

- In November and December 2021 Defendant Grogen, by and through its Chief Financial Officer (Jeff Lasher), requested (although not required by the Transaction, which was an Asset sale) that TGC Systems engage a CPA firm to reconstitute its financial books and records on the basis of an "accrual" basis of accounting rather than a cash or hybrid basis. Plaintiff TGC Systems did so, and the results were provided to Defendant Grogen, which then held a telephone meeting with the CPA firm to review the results and ask questions. Part of the process was a discussion of the very credible TGC Systems multi-million-dollar Business pipeline, which was and had remain substantial throughout 2021. The limited cash position of TGC Systems was also discussed, given that almost nine (9) months had passed since the Loan Funds payment.

- On December 15, 2021 Grogen formally demanded payment of the full aggregated Interim Monthly Payments of the Note. It has claimed default if the payment is not made. (**Exhibit "B"**). The Demand for Payment is for payment of $721,143 (literally almost one-half the amount of the Note) by TGC Systems and the Guarantor TG Holdings on or before December 31, 2021. The TGC System's "Assets" were noted as collateral. (**Exhibit "B"**).

- Plaintiff TGC Systems then maintained, the same day, that a "*controversy or claim*" was clearly present and by its formal "Notice of Mediation & Arbitration" submitted that any GroGen claim of rights was subject to the mediation and mandatory arbitration provisions of the Note and Option. (**Exhibit "A"**). Plaintiff TGC Systems maintained that Defendant Grogen cannot by the Note terms issue a Demand for Payment, or attempt to execute on an seize TGC Systems Assets, to and until the "*controversy or claim*" is resolved pursuant to the Note and Option resolution conditions. (**Exhibit "C"**).

- Subsequent to the TGC Systems Mediation & Arbitration Notice, Defendant GroGen, through its President, stated to Plaintiff TGC Systems that it was entitled to the TGC Systems Assets by reason of a TGC default (as set out in the Demand for Payment), that Grogen effectively "owned" the TGC Systems Assets, and that GroGen intended to execute on the Note and seize the assets pursuant to the Demand for Payment and the Note conditions. Defendant Grogen, through its President, further stated that GroGen was willing to cancel the Note (with interest) _if_ the TGC System's Assets were transferred in cancellation of the Note (and interest). Defendant Grogen, through its President, also stated that the TGC Systems CEO (Derek Oxford) should come to work for GroGen (and would be "taken care of" financially in the process). This would have been in blatant violation of the TGC Systems CEO's fiduciary duties. In reply, TGC and TG Holdings provided a Notice of Lawsuit. (**Exhibit "D"**).

- As elements of the Note and Option documentation process for closing, specific monies were being reserved and escrowed for outstanding TGH (and related) litigation (the "*Litigation Monies*").   The Defendant Grogen Press Release (**Exhibit "E"**) and other related actions by Defendant Grogen have caused and will continue to cause significant material harm to Plaintiffs if no closing takes place and no Litigation Monies are provided as promised by Plaintiff TGC Systems.

- During 2021, Plaintiff TGC Systems also informed Defendant Grogen, and provided materials relating to a "Leasing Option" that could be provided to TGC Systems customers (and then Grogen customers post Transaction), as Defendant Grogen was not interested in internal financing of customers. Plaintiff TGC Systems spent significant time and effort in such regard as an allowed Strategic Arrangement pursuant to the Restrictive Conditions, to be complete post-Transaction.

## V.  CAUSES OF ACTION

19.     In regard to all causes of action, the claims are made by Plaintiff TGC Systems, and Plaintiff TGH is included as a Plaintiff claimant where as a Guarantor of the Transaction it would have independent legal and equitable rights as against Defendant Grogen.

### A.  FIRST CLAIM FOR RELIEF
### Breach of Contract - Note and Option

20.     Plaintiffs restate each and every allegation contained in Paragraphs 1 through 19.

21.     Defendant Grogen agreed to and signed the Note and Option.

22.     The Note and Option was a binding Transaction agreement between Defendant Grogen and Plaintiff TGC Systems, with Plaintiff TGH as Guarantor.

23.     Defendant Grogen exercised its Option for the purchase of the TGC Systems Assets pursuant to its rights in the Transaction.

24.     In signing the Note and Option, Defendant Grogen explicitly agreed to abide by the requirements and obligations set out in the Note and Option and attendant implementing documents.

25.     Defendant Grogen, at the least, engaged in violative and actionable conduct regarding the Note and Option, by:

- Engaging in completion of Note and Option related closing documents to close and complete the Transaction, but then delaying final completion of the documents pending closing dates set by Defendant Grogen throughout 2021, but then never honoring the closing dates.

- Misrepresenting an intent to close the Transaction on a number of occasions, and then cancelling and delaying closings for unknown and on information and belief unlawful reasons.

- Intentionally not closing the Transaction within a commercially reasonable period following exercise of the Option, to its ongoing financial benefit and to the financial detriment of Plaintiff TGC Systems.

- Intentionally delaying any Transaction closing to stretch Plaintiff TGC Systems financially, when Defendant Grogen was fully informed on a number of occasions of the financial status of Plaintiff TGC Systems and the damaging effect of any delayed and cancelled closings on the Business of TGC Systems would have on TGC Systems financial status.

- Intentionally ignoring, in the circumstances, what would be a six (6) month right of repayment of the Note by Plaintiff TGC Systems from an appropriate notice date.

- Intentionally making a Take Over Attempt, at a substantially lower amount than the Transaction, in part by taking advantage of intentionally deferred aggregated Interim Monthly Payments that rose to an amount that could not be paid by Plaintiff TGC Systems when an aggregated  Demand for Payment was made.

- Other material violations of the Note and Option Transaction.

26.     The equitable doctrine of "promissory estoppel" is invoked by TGC Systems and precludes Defendant Grogen from alleging that the six (6) month Option exercise has passed and that it had / has no legal obligation to close. Defendant Grogen actively engaged in conduct past the six (6) month period, following a notice to exercise the Option, that evidenced an intent to close (whether truthful or not), which was reasonably foreseeable by Defendant Grogen as being relied on by Plaintiff TGC Systems and that was then reasonably and substantially relied on by TGC Systems to its financial detriment. In particular, Plaintiff TGC Systems continued to honor

the Restrictive Conditions and continued to operate its Business under cash constraints in reasonable anticipation of closing; all to its financial detriment.

27.     The equitable doctrine of "promissory estoppel" is invoked TGC Systems and precludes Defendant Grogen from alleging a claim of breach of the Note and Option by Plaintiff TGC Systems by not making the Interim Monthly Payments, because by both material statements and its conduct (by not notifying Plaintiff TGC Systems of any breach to and until December 15, 2021 of any alleged payment breach and requesting full payment to date, when the amount outstanding constituted almost one-half the face amount of the Note and when Defendant Grogen knew, by reason of its request for and review of restated TGC Systems financials, that Plaintiff TGC Systems did not have the funds to pay). The reliance by Plaintiff TGC Systems on the material statements and conduct by Defendant Grogen was reasonably foreseeable by Defendant Grogen and was then reasonably and substantially relied on by TGC Systems to its financial detriment. In particular, Plaintiff TGC Systems continued to honor the Restrictive Conditions and continued to operate its Business under cash constraints in reasonable anticipation of closing and the cancellation of the Note (and related interest) in the Transaction; all to its financial detriment.

28.     As a result of breaches of the Note and Option by Defendant Grogen and its failure to close the Transaction, Plaintiff TGC Systems suffered damages to be proven at trial that singularly or when aggregated with other damages will exceed $75,000.

### B.  SECOND CLAIM FOR RELEIF
#### Promissory Estoppel (as an Affirmative Claim)

29.     Plaintiffs restate each and every allegation contained in Paragraphs 1 through 32.

30.     Defendant Grogen by its statements, actions and inaction expressed its intent and capabilities to delay / waive any Interim Monthly Payments and to close the Transaction. As an

element of the Transaction, the Note (and interest) would be cancelled and offset, an element which Plaintiff TGC Systems had as a commercially reasonable expectation.

31.     Defendant Grogen knew its statements, actions and inaction regarding a delay / waiver of Interim Monthly Payments and to close the Transaction would be foreseeably and reasonably relied on by Plaintiff TGC Systems.

32.     Defendant Grogen's statements, actions and inaction were reasonably and substantially relied on by Plaintiff TGC Systems to its financial detriment.  Plaintiff TGC Systems now finds itself facing a very substantial financial Demand for Payment and an alleged right by Defendant Grogen to execute on and seize its Assets if the demand is not met and the Note becomes fully due and payable. Also, as acts of reliance, during 2021 Plaintiff TGC Systems honored the Restrictive Conditions and continued to operate its Business under cash constraints. Plaintiff TGC Systems operationally planned and acted in reliance on the Litigation Monies to be available at closing as well as the customer Leasing Option (which would accelerate customer sales) being completed post-closing.

33.     Defendant Grogen intentionally waited until the close of 2021, when it knew (because of its request for a reconstituted set of TGC Systems financial statements) that TGC Systems did not have the funds to make aggregated Interim Monthly Payments. Defendant Grogen then made a Demand for Payment and to execute on the Note conditions and seize the TGC Systems Assets rather than to close the Transaction, as promised to TGC Systems by and through its ongoing statements, actions and inaction and as required by the Note and Option.

34.     As a result of Defendant Grogen's unlawful and actionable conduct, Plaintiff TGC Systems has suffered actual and special damages in an amount to be proven at trial, which singularly or when aggregated with other damages will exceed $75,000.00.

## C.  THIRD CLAIM FOR RELEIF
### Fraud

35.     Plaintiffs restate each and every allegation contained in Paragraphs 1 through 34.

36.     Defendant Grogen falsely (and continually by its statements, actions and inaction) expressed its intent to TGC Systems to delay / waive any Interim Monthly Payments and to close the Transaction, thereby cancelling the Note (and interest).

37.     Defendant Grogen knew its statements and actions regarding a delay / waiver of Interim Monthly Payments and to close the Transaction were false when made and/or should have known they were false when made; and that such statements, action and inaction would reasonably be relied on by Plaintiff TGC Systems. This was a course of conduct by Defendant Grogen over a period of nine (9) months during 2021.

38.     Defendant Grogen's statements, actions and inaction were with an intent to deceive Plaintiff TGC Systems and were reasonably relied on by Plaintiff TGC Systems to its financial detriment.

39.     Defendant Grogen intentionally waited until the close of 2021, when it knew (because of its request for a reconstituted set of TGC Systems financial statements) that TGC Systems did not have the funds to make aggregated Interim Monthly Payments, to make a Demand for Payment and to execute on seize the TGC Systems Assets, rather than close the Transaction as promised.

40.     Defendant Grogen's demand that TGC Systems transfer its Assets for cancellation of the Note (plus interest), or that it would take the Assets by reason of the Demand for Payment and a default by Plaintiff TGC Systems under the conditions of the Note, constitutes fraud.

41.     As a result of Defendant Grogen's actionable fraudulent conduct, Plaintiff TGC Systems has suffered actual and special damages in an amount to be proven at trial, which

singularly or when aggregated with other damages will exceed $75,000.00. Plaintiff TGC Systems is also entitled to punitive damages and reasonable attorneys' fees due to the egregious nature of Defendant Grogen's conduct.

### D.  FOURTH CLAIM FOR RELIEF
### Fraudulent Misrepresentation

42.  Plaintiffs restates each and every allegation contained in Paragraphs 1 through 41.

43.  Defendants falsely and fraudulently misrepresented their intent and capabilities in the negotiation and execution of the Note and Option, as well as in its statements, actions and inaction during its course of dealing with Plaintiff TGC Systems during 2021. While there were market rumors of changes in strategic direction by Defendant Grogen during 2021, in part because of a new Grogen Chief Financial Officer, Defendant Grogen continually stated that it intended to close the Transaction and continued to set new closing dates, including into early 2022.

44.  Defendants knew their misrepresentations were false when made and/or should have known they were false when they were made, and/or knew and/or should have known they were false during the course of dealing with Plaintiff TGC Systems during 2021 and prior to the Demand for Payment and the demand that Plaintiff TGC Systems transfer its Assets in return for cancelation of the Note (and interest); all to Plaintiff TGC Systems' material financial detriment.

45.  As a result of Defendants false and fraudulent misrepresentations, Plaintiffs have suffered actual and special damages in an amount to be proven at trial, which singularly or when aggregated with other damages will exceed $75,000.00. Plaintiff TGC Systems is also entitled to punitive damages and reasonable attorneys' fees due to the egregious nature of Defendant Grogen's conduct.

### E.  FIFTH CLAIM FOR RELIEF
### Breach of the Implied Covenant of Good Faith and Fair Dealing

46.  Plaintiffs allege and incorporate herein paragraphs 1 through 45.

47.     The Note and Option contain implied covenants by Defendant Grogen, and an associated duty, that Defendant Grogen and its officers, agents and associates will act in good faith and deal fairly with Plaintiff TGC Systems and TGH as Guarantor.

48.     Defendant Grogen's improper efforts to delay, reduce and ultimately avoid obligations with respect to the Note and Option and in closing the Transaction were and are commercially unreasonable and constitute bad faith.

49.     The improper conduct by Defendants includes, among other things, the numerous statements, actions and inaction described throughout this Complaint.

50.     In so doing, Defendant Grogen has improperly put its own financial interests above the interests of Plaintiff TGC Systems and above its obligations to Plaintiff TGC Systems in the Note and Option and to close the Transaction.

51.     Defendant Grogen has also done all of this with the clear intention of avoiding or delaying its obligations, pressuring Plaintiffs to accept minimal financial payments and attendant losses, and by engaging in conduct that establishes intended ill-will toward Plaintiff TGC Systems and TGH as Guarantor.  There is almost no other way to describe Defendant Grogen's severe misconduct.  As a result, Defendant Grogen's bad faith conduct was willful and malicious, and warrants additional civil punishment.

52.     By its statements, actions and inaction, Defendant Grogen has breached the covenants of good faith and fair dealing with respect to the Note and Option Transaction as well as in its related commercial activities regarding Plaintiffs. Defendant Grogen has conducted itself tortiously in bad faith.

53.     As a direct and proximate result of the above-referenced bad faith by Defendant Grogen, Plaintiff TGC Systems and Plaintiff TGH as Guarantor have suffered and will continue to suffer damages that singularly or when aggregated with other damages will exceed $75,000.  These damages will include Plaintiffs' attorney's fees in prosecuting this Complaint as well as punitive damages.

### F.  SIXTH CLAIM FOR RELIEF
### Intentional Interference with a Business Expectancy

54.     Plaintiffs restate each and every allegation contained in Paragraphs 1 through 57.

55.     Plaintiff TGC Systems possessed a valid business expectancy in being able to operate its Business. It did this in honoring the Restrictive Conditions, and relying on the conduct by Defendant Grogen to close the Transaction on its terms.

56.     Defendant Grogen had knowledge of Plaintiff TGC Systems' Business expectancy and was aware of the need for Plaintiff TG Systems to continually develop and expand its customer base in order to efficiently and effectively manufacture for a profit.

57.     Defendant Grogen intentionally and improperly interfered with Plaintiff TGC Systems Business expectancy by entering into a Transaction that it had no intent to complete on its terms (at the outset and/or during its course of dealing with Plaintiff TGC Systems during 2021), either at the outset and/or during its dealings with Plaintiff TGC Systems during 2021, and by keeping Plaintiff TGC Systems, by the terms of the Note and Option (specifically under the Restrictive Conditions which included a prohibition from seeking other financing or related business alliances), as well as extending out any closings so that Defendant Grogen could acquire the TGC Systems Assets and Business under commercial leverage for substantially less than the Assets and ongoing Business commercial value.

58.     Defendant Grogen caused significant damage to Plaintiff TGC Systems as a result of its disruption of Plaintiff TGC System's business relationships and expectancies.

59.     As a result of Defendant Grogen's deliberate and intentional actions, Plaintiff TGC Systems has suffered damages in an amount to be proven at trial that singularly or when aggregated with other damages are will exceed $75,000.

## VI.  PLAINTIFS' CONCLUSION AND PRAYER FOR RELIEF

60.     On All Causes of Action, Plaintiffs pray for:

1.  For a finding that Defendant Grogen must enter into a mediation (and if unsuccessful) an arbitration, before any legal and/or equitable effort to put the Note in Default or attempt to execute on alleged rights to Plaintiff TGC Systems' Assets and any seizure of such Assets takes place.

2.  Also, and independently, for a trial by jury of twelve on all issues triable to a jury as a matter of right.

3.  Also, and independently, for compensatory damages, including attorney's fees, in an amount to be proved at trial.

4.  Also, and independently, for punitive damages, as and where alleged and appropriate in law, for an amount sufficient to punish and make an example of Defendants.

5.  The compensatory and punitive damages to Plaintiffs, on reasonable expectation and belief (given the nature, scope and value of the Transactions) and based on Defendant Grogen's actionable conduct, will be in excess of twenty million dollars ($20,000,000).

6.  Also, and independently, for costs.

7.  Also, and independently, for attorneys' fees (as and were appropriate).

8. Also, and independently, for interest.

9. Also, and independently, for such other relief as the Court may deem just and

proper.

Respectfully submitted,

Passman & Jones,
A Professional Corporation

By: */s/ D. Hunter Polvi*
D. Hunter Polvi
State Bar No. 24083674
Jerry C. Alexander
State Bar No. 00993500
1201 Elm Street, Suite 2500
Dallas, Texas 75270-2599
Telephone:  (214) 742-2121
Facsimile:  (214) 748-7949
polvih@passmanjones.com

*Attorneys for Plaintiffs*
*Total Grow Holdings, LLC, TG Tech Holdings,*
*LLC, and TGC Systems, LLC*